## Case No. 9,710.

### The MONITOR.

[4 Biss. 503.] 1

District Court, N. D. Illinois. July, 1868.

COLLISION—VESSEL AT DOCK—TUG WITH TOW.

1. A canal-boat moored at a certain dock by the order of the harbor-master is lawfully there, even though it be at a narrow place in the river.

2. A tug with a tow must maneuver cautiously and prudently; and suction of the water from a passing vessel is one of those natural incidents which she must guard against.

In admiralty.

---

## Case No. 9,711.

### The MONITOR and The HILL.

[3 Biss. 24; 1 3 Chi. Leg. News, 353; 14 Int. Rev. Rec. 70.]

District Court, N. D. Illinois. June Term, 1871.

COLLISION—JOINT NEGLIGENCE OF TWO VESSELS—DIVISION OF DAMAGES—MEASURE OF DAMAGES.

1. Where a vessel was injured by the joint negligence of another vessel and a tug, the damage should be apportioned between them.

---

1 [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

1 [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

2. In estimating the damages, the expense of repairing the mast, and demurrage for the time lost, should be allowed.

3. The mast, as repaired, having stood the remainder of the season, and it not appearing but what it would have continued serviceable, the expense of putting in a new mast during the next winter cannot be recovered.

In admiralty. This was a libel filed by John Prindeyille, as owner of the barque Major Anderson, against the tug Monitor and the brig Hill, for damages caused by a collision in Chicago harbor.

Waite & Clarke, for libellant.

Spafford & McDaid, for respondent.

BLODGETT, District Judge. The substantial facts in this case, as they appear from the pleadings and proofs, are, that on the morning of the 21st of April, 1869, the barque Major Anderson, belonging to the libellant, was lying in the Chicago river, moored outside of two other vessels which were moored to the dock. Immediately below the Anderson the brig Hill lay moored outside of another vessel which was also moored to the dock. The tug Monitor came alongside the Hill and made fast to her, for the purpose of towing the Hill to some other point up the stream. A strong current was running in the river at the time. In order to get into the open channel, it was necessary to work the Hill outside of the Anderson, and in attempting to do so, and while she was in tow of the tug, the bowsprit of the Hill became entangled in the mizzen-lift of the Anderson, and produced such a strain upon the rigging of the Anderson as to fracture the mizzen-mast near the deck. This result was unquestionably produced, as shown by the testimony, by the combined unskillful management of those in charge of the tug, and those in charge of the Hill. It seems there was a line run from the timber-heads of the Hill to the dock, which should have been rendered off, or allowed to run free as soon as the Hill was in control of the tug; but instead of doing so the men on the Hill held said line taut, whereby the Hill was drawn forward and upstream, instead of following the tug in a diagonal or direct line across or toward the center of the stream until she was outside the Anderson, as was manifestly intended. The evidence shows that those in charge of the tug were careless or negligent in not noticing the course the Hill was taking, and in keeping the force of the tug applied after the Hill's bowsprit became entangled in the rigging of the Anderson, although they were notified of the trouble, and ought to have slacked up.

I therefore find no difficulty in determining that the damage to the Anderson should be borne jointly by the Hill and the tug. The libellant claims as damages, first the cost of fishing the mast, which was $58; second, demurrage for one day while the mast was being repaired, $100; third, the cost of a new mast which was put in during the following winter, $385.

The only serious difficulty I have met with in the case is in fixing the amount of damages to which the libellant is justly entitled under the circumstances. The evidence shows that the mast was not broken off, but was cracked or strained to such an extent as to render it unsafe for service in the estimation of all who saw it, and it was properly fixed at the expense of $58 and one day's delay, so that it seems for all practical purposes to have been as useful as it was before the injury. It may not have been as symmetrical, but it evidently was as serviceable. It is claimed on the part of the libellants that they were entitled to a new mast in place of the old one thus broken by the carelessness of the respondents, and this might possibly be true if the old mast had been rendered entirely worthless, so that it was impossible to repair it and make it fit for service. But the proof shows that by fishing it did good service during the entire season, and there is no evidence but what it would have continued as serviceable for the remainder of the life of the vessel. There is also considerable evidence on the part of the respondents tending to show that this mast was weak and rotten at the time it received the injury. Some of the witnesses who examined it directly after the accident noticed rotten and decayed spots in it, and others who examined it the next winter, after it was taken out of the hull, testify to its showing a very considerable condition of decay.

The rule of compensation, where the damage can be repaired, is to make the injured part, as nearly as possible, as good as it was before the injury occurred; and applying that rule to this case, it seems to me the respondents ought not to be mulcted in the cost of the new mast. The old mast, when repaired, served all the purposes that it did before the injury. The vessel was eight or nine years old, and all her wood work must therefore have been somewhat impaired and weakened by service and decay; especially does the proof show that condition of things to have existed in reference to this injured mast, as it certainly broke or cracked on very slight provocation, and I do not think it would be equitable to give the libellant the cost of the new mast. If he has seen fit to take out the damaged or fished mast, and throw it away as a total loss, and replace it with a new one, he must do so at his own cost. There was no malice, or such gross carelessness shown in the case as entitles the libellant to exemplary or punitive damages. He is only entitled to be made good, and was substantially so by the fishing of the old mast.

This view of the case is fully sustained by the supreme court, in Smith v. Condry, 1 How. [42 U. S.] 35; Williamson v. Barrett, 13 How. [54 U. S.] 111; The Granite State, 3 Wall. [70 U. S.] 314.

A decree will therefore be entered finding

both the tug and brig at fault, and jointly and severally liable for the damages, and fixing the damages at one hundred and fifty-eight dollars, being the cost of repairing the injured mast and one day's demurrage. No interest is allowed, as the proof shows respondents to have been at all times willing to pay the actual damage. But as no tender was made, the libellant will have his decree for costs.